# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LINDA WATTS o/b/o A.W.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:11-cv-02625-RDP |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION, COMMISSIONER** } | |
| **MICHAEL J. ASTRUE,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff's[1] Memorandum in Support of Disability (Doc. # 9), Motion to Remand Pursuant to Sentence Six (Doc. # 12), and Motion to Remand Pursuant to Sentence Four (Doc. # 18). The court held a hearing on Plaintiff's motions on June 7, 2012. The court addresses both motions below, but in reverse order.

**I.     Plaintiff's Motion to Remand Pursuant to Sentence Four**

One instance of an appropriate remand under Sentence Four is when the Appeals Council did not adequately consider newly submitted evidence. *Ingram v. Commissioner of Social Sec. Admin.*, 496 F. 3d 1253, 1268 (11th Cir. 2007). At the June 7, 2012 hearing, Plaintiff conceded on the record that the only basis for remanding this action under Sentence Four is the argument that new evidence was submitted to the Appeals Council, which was not before the ALJ, but was not properly considered by the Appeals Council. (Tr. at 2-3). However, only that evidence which was so

---

[1] This case was filed by Linda Watts on behalf of her minor child. Accordingly, throughout this Memorandum Opinion and the accompanying Order, she will be referred to as "Plaintiff" and her minor child will be referred to as "Claimant."

submitted and relates back to the period under consideration by the ALJ is relevant to a remand. Here, that means that only that evidence which relates to Claimant's alleged disability status before February 2, 2009, the date of the ALJ's decision, is relevant to Plaintiff's requests to remand.

Plaintiff argues primarily that the records from the C.E.D. Mental Health Center from August and October 2008 that relate to Posttraumatic Stress Disorder and Depressive Disorder warrant a remand, as well as certain school records from 2004-2007. That is, Plaintiff's motion to remand under Sentence Four (Doc. # 18) is necessarily based upon the C.E.D. records (R. at 382-385) and certain school records, which Dr. Wilson partially relied upon in his March 15, 2011 evaluation of Claimant.

As an initial matter, Plaintiff argues that this case should be remanded because the Appeals Council failed to consider the newly submitted medical records. There are at least two flaws in that argument. First, the Appeals Council expressly stated that it considered those records. Second, the bulk of the records submitted were dated after February 2, 2009, and those records are necessarily irrelevant to a determination of whether Claimant was disabled on or before that date.

Plaintiff acknowledges that Dr. Wilson's evaluation is outside the relevant time period, but argues that it is significant because it established that Claimant was disabled based on the C.E.D. records. The C.E.D. records demonstrate that when Claimant was examined on August 11, 2008, Claimant was diagnosed (per the "Diagnosis Code" on his chart) with Posttraumatic Stress Disorder and Depressive Disorder, and Claimant's assessed Global Assessment of Functioning ("GAF") score was 60. (R. at 382). Claimant was noted to be exercising more and eating healthier, and was reported to be more willing to engage in conversation with the therapist despite the fact that Claimant was experiencing depression and having nightmares. (R. at 382-383). When Claimant was

examined in October 2008, Claimant was still noted to have Posttraumatic Stress Disorder (per the "Diagnosis Code" in Claimant's records), but there was no mention of Depressive Disorder. (R. at 385). Additionally, Claimant's assessed GAF score was 55; Claimant was noted to be irritable and dysphoric, and expressed the desire to have a relationship with Claimant's biological father who had been abusive. (R. at 385).[2] Although Claimant was diagnosed with Posttraumatic Stress Disorder and Depressive Disorder in 2008, Claimant's GAF scores of 60 and 55 indicate only moderate difficulty in functioning. Accordingly, this evidence does not establish that Claimant was disabled and thus does not support the contention that the Appeals Council failed to adequately consider the newly submitted evidence.

Dr. Wilson also evaluated school records from 2004-2007 when concluding that Claimant was disabled on March 15, 2011. (R. at 781). Plaintiff's arguments have not focused as much on these school records, and were not discussed in her motion to remand under Sentence Four. To be sure, Plaintiff stated at the hearing that she was willing to submit supplemental briefing on these records. However, a review of the evidence submitted to the Appeals Counsel demonstrates that the school records were never submitted to the Appeals Council. (R. at 4-7). Accordingly, since the Appeals Council was never presented with this evidence, these records cannot support a remand under Sentence Four.[3]

---

[2] In summarizing these documents, the court has reviewed the record and considered Plaintiff's characterization of these records in the Motion to Remand Pursuant to Sentence Four (Doc. # 18 at 2-3).

[3] To the extent Plaintiff relies on the school records from 2004-2007, referenced by Dr. Wilson, for her motion to remand under Sentence Six, the court is unsure of which documents in the record contain these school records. There are documents labeled "Education Records" dated February 25 through March 18, 2004, (R. at 243-264), but these records are dated prior to Claimant's alleged onset of disability. The only other document in the record that appears to be from a school,

Dr. Wilson diagnosed Claimant on March 15, 2011 with Depression and Posttraumatic Stress Disorder. In the March 15, 2011 examination of Claimant, Dr. Wilson noted that he had previously evaluated Claimant on October 6, 2009, and included some notes from that evaluation in the present one, such as the fact that he had been told that Claimant began going to mental heath professionals sometime after the 2007 fire that burned Claimant's family's residence. Plaintiff argues that Dr. Wilson's evaluation establishes that Claimant had symptoms related to Depression and Posttraumatic Stress Disorder prior to February 2, 2009. The court disagrees.

First, Dr. Wilson's diagnoses of Claimant are based on evaluations of Claimant after the relevant time period under consideration by the ALJ. Further, Dr. Wilson never opined that Claimant's diagnoses existed prior to March 15, 2011 and provided no reason in his evaluation for the court to assume that Claimant suffered from the same symptoms of Posttraumatic Stress Disorder and Depression prior to March 15, 2011. What is more, his evaluation does not provide any insight into Claimant's conditions prior to February 2, 2009. In addition, as discussed above, the relevant records that Dr. Wilson relied on do not support a remand. Accordingly, Dr. Wilson's evaluation, which was submitted to the Appeals Council, does not support a remand under Sentence Four.

---

that is within the relevant time period, is a teacher questionnaire dated March 29, 2007, filled out by a Special Education Teacher Juli Jones (R. at 104-111). The document indicates that Claimant was evaluated in many categories regarding overall functioning. Although Claimant was described as having problems in "acquiring and using information," "attending and completing tasks," and "caring for []self," Claimant never received a rating of "a very serious problem" and received "no problems" in many categories. Claimant's teacher stated that Claimant needs assistance with classwork, fails to ask for help, sometimes forgets material previously learned, and daydreams. Further, the teacher noted that she was not sure whether Claimant had any medical conditions other than foot problems. Overall, the teacher was not very descriptive in her evaluation and did not fill out the "additional comments" section. As a whole, this evaluation demonstrates that Claimant did have problems with learning and applying information and completing tasks. However, this evaluation does not connect Claimant's problems to Posttraumatic Stress Disorder or Depressive Disorder, nor does it support any of Plaintiff's arguments for a remand.

Plaintiff's motion to remand under Sentence Four also relies on – albeit less heavily – certain reports from Gadsden Regional Medical Center, some of which relate to the time period under consideration by the ALJ (*i.e.*, on or before February 2, 2009). The relevant reports, dated September 5, 2007, demonstrate that Claimant was admitted to the emergency room due to a headache, fever, and stomach pain, and ultimately diagnosed with a viral syndrome – a cold. (R. at 652, 659). The records from Claimant's September 5, 2007 visit to Gadsden Regional Medical Center simply do not shed any light on Claimant's alleged impairments or functional limitations, and do not support a Sentence Four remand.

The Appeals Council stated that it considered the evidence when it denied review of the ALJ's decision, and Plaintiff has not established that the evidence submitted to the Appeals Council would have warranted a reversal of the ALJ's disability determination. Given that the new evidence submitted to the Appeals Council did not call into question any of the ALJ's findings, there is no basis for a Sentence Four remand at this point based on the same evidence.

## II.     Plaintiff's Motion to Remand Pursuant to Sentence Six

Sentence Six permits a district court to remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff's argument for a Sentence Six remand (Doc. # 12) is based on Dr. Prince's January 17, 2012 evaluation of Claimant and the fact that in a subsequent case for disability benefits, a different ALJ granted Claimant disability benefits for a period starting on February 3, 2009, based largely on Dr. Prince's report. However, a review of Dr. Prince's report demonstrates that Dr. Prince merely offered his opinion on Claimant's disability status as of Dr. Prince's January 17, 2012 examination of Claimant, and did not opine

whether the onset of Claimant's disability occurred prior to February 3, 2009. (Doc. # 12-1). In fact, Dr. Prince's opinion sheds no light on Claimant's conditions from May 12, 2004 through February 2, 2009. The same goes for the other allegedly new evidence Plaintiff submitted in support of her arguments for a Sentence Six remand (Doc. # 24), which are all dated after February 2, 2009, and do not discuss Claimant's conditions prior to February 2, 2009. (Docs. # 24-1 and # 24-2). Accordingly, since this new evidence submitted by Plaintiff does not relate to the May 12, 2004 through February 2, 2009 time period under consideration by the ALJ, this new evidence is not relevant and does not constitute a sufficient basis for remand under Sentence Six. What is more, Plaintiff has not shown good cause for the failure to previously incorporate this allegedly new, material evidence into the record. *See* § 405(g). A Sentence Six remand is thus not warranted in this action.

### III.   Plaintiff's Arguments Regarding Disability

Plaintiff conceded at the hearing that there is no basis for reversing the decision of the ALJ in the absence of consideration of the new evidence submitted to the Appeals Council. (Tr. at 2-3). Further, Plaintiff stated she is not arguing that the ALJ misapplied the law. (Tr. at 9). These concessions are at odds with some of Plaintiff's arguments in her Memorandum in Support of Disability. Thus, out of an abundance of caution, the court addresses Plaintiff's arguments in her Memorandum that she seemed to abandon at the hearing.[4]

---

[4] On June 14, 2012, Plaintiff filed a supplemental memorandum (Doc. # 27), listing evidence in the record that she argues supports an award of benefits. After reviewing the relevant documents, the court concludes that the evidence Plaintiff points to does not support a remand or an award of benefits, and has no effect on this order.

**A.     The ALJ Did Not Fail to Develop the Record.**

One of Plaintiff's arguments for reversal and/or remand is that the ALJ failed to develop the record. Although an ALJ has a basic duty to develop a full and fair record, Claimant has the burden of proving disability and producing evidence to support that claim. *See Ellison v. Barnhart*, 355 F. 3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(a-d). Plaintiff admits that part of the reason for the initial allegedly deficient record was Plaintiff's original counsel, but contends that the Commissioner should have obtained the C.E.D. Mental Health Records. However, as discussed above, the C.E.D. documents do not warrant a remand and would not have changed the disability determination of the ALJ even if the documents had been originally included in the record.

Plaintiff has also pointed to additional evidence that she contends the ALJ should have collected that allegedly demonstrates that Claimant had the severe impairments of obesity, sleep apnea, and foot pain. ( Doc. # 9 at 16-17; R. at 336-375, 386-599).[5] Plaintiff summarized the relevant records from Children's Hospital of Birmingham (R. at 386-591) in her motion to remand under Sentence Four (Doc. # 18 at 5). As noted by Plaintiff, these records detail the complications, medication, and treatment associated with Claimant's sleep and weight problems. Plaintiff's summary of these documents reveal that after a sleep study, Claimant was noted to have "mild abnormalities" and "very mild obstructive sleep apnea." Nothing in Plaintiff's summary of these documents suggest that Claimant's sleep apnea was more than a moderate or mild condition. Additionally, Plaintiff's summary of the physician visits regarding Claimant's weight merely shows blood pressure, weight, and medications. Notably, Plaintiff's own summary of these documents does

---

[5] Some of the documents contained in pages 386-599 in the record are outside of the relevant time period.

not indicate that Claimant's sleep and weight problems resulted in severe impairments or that Claimant had resulting functional limitations. The court's review of these documents confirms Plaintiff's summaries, particularly that in spite of the fact that Claimant was continuously examined for sleep apnea and obesity, among other things, Claimant was not noted to have severe impairments and that the records do not indicate (and barely discuss) whether Claimant suffered functional limitations from these conditions. Specifically, Claimant's apnea was rated normal on September 6, 2007 (R. at 587), and on March 3, 2008, a doctor noted that Claimant had "very mild obstructive sleep apnea," but did not believe that this minimal obstruction was contributing to Claimant's excessive sleepiness. (R. at 507-508). The examinations regarding Claimant's weight merely reveal that the physicians were monitoring Claimant's progress in losing weight and compliance with their instructions to exercise more and eat healthier.

Additionally, Plaintiff argues that the ALJ should have collected certain evidence in the record that was submitted to the Appeals Council and established that Claimant had the severe impairment of bilateral foot pain. (R. at 336-375). These records, however, which are from Riverview Regional Medical Center, barely discuss Claimant's foot conditions and do not support the argument that Claimant suffered the severe impairment of bilateral foot pain. Further, these documents indicate that on October 24, 2006 and July 6, 2007, Claimant was noted to have no physical limitations or learning disabilities. (R. at 336, 353).

In sum, the evidence on which Plaintiff relies for her argument that the ALJ failed to develop the record does not support a finding of disability. Plaintiff has failed to demonstrate that there were medical records that the ALJ should have, but failed to, consider, or that the evidence before the ALJ failed to constitute a full and fair record. Accordingly, the court concludes that the ALJ made its

determination based on a sufficient record and substantial evidence, and the ALJ was not obliged to collect the new, allegedly material evidence submitted to the Appeals Council because this evidence would not have had an effect on the ALJ's denial of disability benefits.

### B.  Plaintiff Did Not Meet Listing 112.04.

Plaintiff argues that evidence submitted to the Appeals Council demonstrates that Claimant met Listing 112.04, which covers Mood Disorders. In particular, Plaintiff asserts that her proof met Listing 112.04 (Doc. # 9 at 22-24) for the original period of consideration by the ALJ, May 12, 2004 through February 2, 2009, and that on February 24, 2012, a different ALJ determined that from February 3, 2009 through February 24, 2012, Claimant fell within Listing 112.04.

First, although the ALJ concluded in his February 24, 2012 decision that Plaintiff's proof met Listing 112.04, the majority of the evidence he considered for this determination was dated after February 2, 2009. The only evidence that the ALJ considered for this determination that occurred prior to February 2, 2009 were Claimant's "medical records [that] show[ed] that [Claimant] has received mental health treatment from the C.E.D. Mental Health Center since at least 2007 for post-traumatic stress disorder (PTSD) and depressive disorder." (Doc. # 22-1 at 9).[6] Although it is not clear exactly what records the ALJ was referring to, the court understands that the ALJ considered the C.E.D. records from August and October 2008. In support of Plaintiff's argument that her proof

---

[6] The court notes that in the ALJ's February 24, 2012 decision, the ALJ evaluated whether Claimant met Listing 112.04 and Listing 112.06, Anxiety Disorders, in the same section. (Doc. # 22-1 at 8-10). The ALJ did not differentiate between the evidence supporting each of these Listings. However, based on the seventh criteria for Anxiety Disorders, "recurrent and intrusive collections of a traumatic experience, including dreams, which are a source of marked distress," it seems that the evidence demonstrating that Claimant received mental health treatment since at least 2007 for Posttraumatic Stress Disorder related to Listing 112.06, not Listing 112.04. (Doc. # 22-1 at 9). Nonetheless, it is not clear that the subsequent ALJ's determination that Claimant met Listing 112.04 was based on evidence that was before the initial ALJ.

met Listing 112.04, Plaintiff cites to the 2008 C.E.D. records, Dr. Wilson's report which relied heavily on these records, and other records dated after February 2, 2009 (Doc. # 9 at 22-24).  The only timely relevant evidence supporting Plaintiff's argument is the C.E.D. records.  However, as discussed above, though these records indicated that Claimant was diagnosed with Posttraumatic Stress Disorder and Depressive Disorder, Claimant's GAF scores of 60 and 55 in those records indicated only moderate difficulty in functioning.  There is simply not enough evidence to support a finding that Claimant suffered marked or extreme limitations as a result of these diagnoses.  Further, the decision of the second ALJ cannot be compared to the decision of the ALJ at issue in this case because the two ALJs were presented with largely different evidence covering different time periods.  Accordingly, the ALJ properly determined on February 2, 2009, based on substantial evidence, that Plaintiff's proof did not meet Listing 112.04.

      **C.**    **Claimant Did Not Meet Listing 103.03.**

Plaintiff argues that evidence in the record at the time the ALJ made his February 2, 2009 decision and newly submitted evidence to the Appeals Council establish that Claimant met Listing 103.03 for Asthma.  Plaintiff refers to a list of Claimant's doctor's visits where Claimant was treated for Asthma, as well as pharmacy records from 2010 that show the asthma medications Claimant was prescribed.  (Doc. # 9 at 25-28).  Once again, the medical and pharmacy records dated prior to February 2, 2009 are outside of the relevant time period under consideration by the ALJ.  Thus, the relevant documents Plaintiff relies on include records dated August 29, 2005 through February 8, 2007. To satisfy Listing 103.03, Plaintiff must show:

> A. FEV1 ("forced expiratory volume") equal to or less than the value specified in table I of 103.02A (ranging from .65-1.65, depending on the individual's height); or

> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of ast least 12 consecutive months must be used to determine the frequency of attacks; or
>
> C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
>
>> 1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation of peribronchial disease; or
>> 2. Short courses of coricosteroids that average more than 5 days per month for at least 3 months during a 12-month period; or
>
> D. Growth impairment as described under the criteria in 100.00.

20 C.F.R. pt. 404, subpt. P, app. 1, § 103.03.

First, Claimant's FEV1 was measured in 2006 to be 2.267, 2.369, and 2.232 when Claimant was 59 inches, which is well above the required FEV1 of 1.35 to meet Listing 103.03. (R. at 274). There is no further evidence of Claimant's measured FEV1 for the relevant time period. Moreover, the evidence does not show that Claimant experienced the attacks or growth impairment as described in Listing 103.03B-D. (R. at 267-270). The records submitted by Plaintiff merely demonstrate that Claimant was diagnosed with Asthma and prescribed medication for Asthma; they are completely devoid of any support for Plaintiff's argument that Claimant met Listing 103.03 for Asthma. Accordingly, the record does not contain any evidence supporting the allegation that Plaintiff's proof met Listing 103.03, and the ALJ's determination is based on the substantial evidence in the record.

**D.     The ALJ Considered All of Claimant's Severe Impairments.**

Plaintiff argues that the ALJ failed to consider all of Claimant's severe impairments and follow the appropriate standard in finding that the following of Claimant's conditions are not severe: severe depression, posttraumatic stress disorder, generalized anxiety disorder, ADHD, obstructive sleep apnea, chronic feet pain with s/p "flatfoot" reconstruction and requiring foot braces, bilateral hearing loss, and diabetes. (Doc. # 9 at 21). Plaintiff also contests the ALJ's finding that these above conditions are not severe. A review of the ALJ's opinion demonstrates that when evaluating whether Claimant had severe impairments, the ALJ did consider and discuss all of Claimant's allegedly severe impairments and specifically explained why he concluded that these impairments were not severe. (R. at 15-17). Further, after careful review of the record, the court concludes that the ALJ's determination that these conditions were not severe was supported by substantial evidence and the ALJ followed the proper standards. *See Brady v. Heckler*, 724 F. 2d 914, 920 (11th Cir. 1984) (an impairment or combination of impairments is considered not severe if it is a slight abnormality that has only a minimal effect on the individual's ability to perform basis work activities, irrespective of age, education, or work experience).

**E.     The ALJ's February 24, 2012 Findings Are Not Probative to Claimant's Conditions Prior to February 2, 2009.**

At the June 7, 2012 hearing, Plaintiff argued that the subsequent ALJ's findings that Claimant was disabled since February 3, 2009 and that from February 3, 2009 through February 24, 2012, Claimant's impairments caused more than minimal functional limitations, indicate that Claimant suffered functional limitations prior to February 3, 2009. The court notes that the bulk of the evidence considered by the ALJ (who determined on February 24, 2012 that Claimant was

disabled since February 3, 2009) was from after February 2, 2009. The only evidence cited by the subsequent ALJ that is relevant to the period under consideration by the ALJ at issue here are C.E.D. records demonstrating that Claimant had received mental health treatment since at least 2007 for Posttraumatic Stress Disorder and Depressive Disorder. (Doc. # 22-1 at 9). As discussed above, the C.E.D. records from 2008, which the court assumes are the same records discussed in the ALJ's decision, demonstrate that Claimant only had moderate difficulty in functioning as a result of these two diagnoses. Although some of the evidence Plaintiff submitted after February 3, 2009 indicates that Claimant suffered Posttraumatic Stress Disorder because of the house fire in 2007 (Doc. # 24-2; R. at 781-786), there is no evidence before the court that the onset of Claimant's functional limitations resulting from Depression and/or Posttraumatic Stress Disorder must have (or even probably) occurred prior to February 3, 2009.

At the hearing, Plaintiff argued that Dr. Wilson's report and the C.E.D. records demonstrate that Claimant's disabling conditions must have been present prior to February 3, 2009 (Tr. at 11). However, the C.E.D. records only demonstrate that Claimant was diagnosed with Posttraumatic Stress Disorder and Depressive Disorder in 2008, not that Claimant suffered severe functional limitations, and Dr. Wilson's report does not provide an opinion on when Claimant's disabling conditions first presented themselves. (R. at 781-786). Plaintiff's argument for the fact that the subsequent ALJ decision demonstrates that Claimant was disabled prior to February 3, 2009 boils down to her opinion that Claimant could not have become disabled in a day. (Tr. at 13). However, as discussed repeatedly throughout this opinion, the evidence on which Plaintiff relies do not address the functional limitations Claimant suffered prior to February 3, 2009 as a result of Posttraumatic Stress Disorder and Depressive Disorder. Without any evidence establishing the link between

Claimant's post-February 2, 2009 functional limitations and pre-February 2, 2009 moderate levels of functioning, Plaintiff's argument has no traction.

## IV.     Conclusion

For the reasons stated above and discussed by the court during the June 7, 2012 hearing, Plaintiff's Motions to Remand Pursuant to Sentence Four and Sentence Six (Docs. # 12, 18) are due to be denied. Additionally, the court finds that the ALJ's determination that Claimant was not disabled from May 12, 2004 through February 2, 2009 is supported by substantial evidence and proper legal standards were applied in reaching this determination. Accordingly, the Commissioner's final decision is due to be affirmed. An order in accordance with the Memorandum Opinion will be entered separately.

**DONE** and **ORDERED** this ____15th____ day of June, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE